O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CRYSTAL HOWARD, | ) | Case No. EDCV 12-01633-OP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

The Court[2] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[3]

---

[1] Carolyn W. Colvin, the current Acting Commissioner of Social Security, is hereby substituted as the Defendant herein. Fed. R. Civ. P. 25(d)(1).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the assigned United States Magistrate Judge in the current action. (ECF Nos. 8, 9.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the

(continued...)

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") complied with the previous District Court Order requiring the ALJ to properly consider the opinions of examining physician, Dr. Berman, and treating physician, Dr. Multani;

(2) Whether the ALJ inappropriately substituted his own judgment for that of Plaintiff's treating physicians, Dr. Pasuhuk, Dr. Symonett, and Dr. Yang, when he rejected their opinions because the objective evidence did not show what he would expect it to show; and

(3) Whether the ALJ provided a complete and accurate assessment of Plaintiff's residual functional capacity ("RFC").

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson

---

[3](...continued)
Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.  Procedural History.**

On April 28, 2005, Plaintiff filed concurrent applications for SSI and SSD Benefits. (Administrative Record ("AR") at 151-53.) On September 29, 2005, Plaintiff's concurrent applications were denied initially (id. at 61-65), on December 13, 2005, upon reconsideration (id. at 55-60). Plaintiff filed a timely Request for Hearing and hearings were held on June 13, 2007, and April 3, 2008. (Id. at 765-87, 788-811.) On April 28, 2008, Administrative Law Judge ("ALJ") Gail Reich, issued an unfavorable decision. (Id. at 32-43.) A request for review of the hearing decision resulted in an Appeals Council remand on January 9, 2009. (Id. at 95-98.) On August 12, 2009, and November 30, 2009, hearings were again held. (Id. at 812-31, 832-48.) On December 18, 2009, an unfavorable decision issued. Plaintiff then commenced a federal court action in this District, case number EDCV 10-914-OP.

On January 28, 2011, this Court granted judgment for Plaintiff and remanded the case for further administrative proceedings ("Opinion"). (Id. at 870-86.) Specifically, the Court ordered that upon remand, the ALJ would properly consider the opinions of Dr. Berman and Dr. Multani, and, if the ALJ

1  again determined rejection was warranted, to set forth legally sufficient reasons
2  for rejecting these doctors' opinions. (Id. at 878-79, 882.)
3        On May 8, 2012, a hearing was held before Administrative Law ("ALJ")
4  Joseph Lisiecki III. (Id. at 1386-1407.) On July 30, 2012, the ALJ issued an
5  unfavorable decision. (Id. at 849-67.) On October 3, 2012, Plaintiff
6  commenced this action.
7  **B.**     **ALJ Decision.**
8        The ALJ found that Plaintiff has the severe impairments of history of
9  deep vein thrombosis ("DVT"); migraine headaches; lumbar spine disc disease
10  with chronic back pain; diabetes mellitus; sickle cell anemia; and major
11  depressive disorder. (Id. at 854.) The ALJ also found that Plaintiff has the
12  RFC to perform light work, with the following limitations: Plaintiff is able to
13  lift and/or carry twenty pounds occasionally, ten pounds frequently; stand and
14  walk with normal breaks for six hours of an eight-hour day; sit with normal
15  breaks for a total of six hours of an eight-hour day; can occasionally climb,
16  balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or
17  scaffolds; avoid extreme cold, heat, wetness, humidity, noise; avoid
18  concentrated exposure to vibrations and hazards such as fumes, odors, or gases;
19  and is limited to simple tasks with simple work related decisions with only
20  frequent interaction with co-workers and supervisors in a non-public setting.
21  (Id. at 860, 861.)
22        Relying on the testimony of a vocational expert ("VE"), the ALJ
23  concluded that Plaintiff was not capable of performing her past relevant work.
24  (Id. at 865.) Also based on the testimony of the VE, the ALJ found that
25  Plaintiff could perform the requirements of occupations such as Shoe Packer
26  (Dictionary of Occupational Titles ("DOT") No. 920.687-166), Mail Clerk
27  (DOT No. 209.687-026), and Housekeeping (DOT No. 323.687-014). (Id. at
28  866.)

### C. The ALJ Properly Considered the Opinions of Dr. Berman and Dr. Multani.

Plaintiff contends the ALJ failed to comply with the District Court Order requiring the ALJ to properly consider the opinions of the agreed medical examiner from Plaintiff's workers' compensation case, Dr. Berman, and Plaintiff's treating psychiatrist, Dr. Multani. (JS at 3-14.)

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33; Social Security Ruling 96-2p. Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

/ / /

### 1. **Dr. Berman.**

Dr. Berman's March 20, 2006, Agreed Medical Evaluation, was conducted in relation to Plaintiff's workers' compensation claim. (AR at 578-615.) The report is extensive and includes a thorough review of Plaintiff's past medical records as well as Dr. Berman's findings from a physical examination of Plaintiff. Dr. Berman noted that an MRI of Plaintiff's left shoulder revealed mild supraspinatus tendinitis without a definitive rotator cuff tear,[4] and an MRI of Plaintiff's lumbar spine was "potentially significant with a 4.5 mm posterior and right protrusion at L4-5 and a central 5 mm protrusion at L5-S1." (Id. at 608.) Ultimately, Dr. Berman reported limited cervical and lumbar mobility, lower back pain elicited from all planes of motion, and complaints along the posterior aspect of the lower extremities upon sitting straight leg raises. (Id. at 581-82, 610.) Plaintiff also exhibited left calf atrophy. (Id. at 610.) Dr. Berman also reported shoulder pain on all planes of motion and complaints on left shoulder impingement testing, but evidenced good strength of the rotator cuff. (Id. at 582-83, 609-10.) Dr. Berman concluded that Plaintiff suffered from a sprained/strained left shoulder with impingement syndrome, chronic recurrent musculoligamentous strain of the lumbosacral spine, lower extremity radicular involvement, discogenic pathology per MRI, and cervicotrapezial musculoligamentous strain. (Id. at 607.) Dr. Berman did not preclude Plaintiff from work, but recommended that Plaintiff "avoid heavy lifting and overhead activities with repetitive activities above the shoulder" and "avoid heavy work activities, along with prolonged weight bearing and prolonged sitting." (Id. at 610.)

---

[4] On March 24, 2005, Plaintiff was caring for a patient who had fallen twice; she picked up that person each time and felt lower back and left shoulder pain. (AR at 579.)

In its prior Opinion, the Court found remand was warranted, partly for the reason that the ALJ had selectively considered Dr. Berman's findings when he noted that Dr. Berman's findings were "overall normal." (AR at 876-77.) Moreover, the Court found that the ALJ's complete disregard of Dr. Berman's opinions due to the fact that they arose from a workers' compensation case was error. (Id. at 878.)

In denying Plaintiff's application on remand, the ALJ discussed Dr. Berman's opinions as follows:

> The claimant also alleged she has a problem with her left shoulder including tendonitis and a cyst. In the agreed medical examiner's report dated March 20, 2006, there is a note that x-rays of the claimant's left shoulder were unremarkable. The file contains no other imaging scans or radiographs of the . . . claimant's left shoulder as of the alleged onset date. This shows the claimant had no *continued* complaints of left shoulder problems in spite of past treatment for issues related to that shoulder. Thus, since the alleged onset date [of May 2, 2005], there is no evidence of problems with her left shoulder and I find this is a non-severe impairment.

(Id. at 855 (emphasis added) (citation omitted).) The ALJ further examined Dr. Berman's findings:

> Also considered is the opinion of Jeffrey Berman, M.D., the agreed medical examiner from the claimant's workers' compensation case, in the agreed medical examination report dated March 20, 2006. Dr. Berman personally examined the claimant and reviewed all of the records given to him that pertained to the claimant's workers' compensation case before completing the agreed medical examination report and giving an opinion on the claimant's retained work capacity. Dr. Berman opined the claimant could still work but

>that she should avoid heav[y] lifting and overhead activities with repetitive activities above shoulder level; and avoid heavy work activities along with prolonged weight bearing and prolonged sitting. One problem is the phrasing of the limitations contained in the report. Agency Regulations and Rulings require the residual functional capacity to be worded in terms of what the claimant is still capable of performing in spite of the assessed impairments. As such, it is impossible to determine what the claimant is still capable of performing because Dr. Berman's restrictions are not provided in such terms. Therefore, the opinions of Dr. Berman provide no additional insight into the claimant's retained work capacity because Dr. Berman only indicates what [Plaintiff] is not capable of doing. Therefore, no weight is given to this opinion because the specific opinion given is not given in terms that are usable or identifiable by the Agency,

(Id. at 862-63 (citations omitted).)

Plaintiff contends that although it is "unclear how much Plaintiff's left shoulder impairment restricts her lifting ability," the ALJ should have included some limitation in the RFC regarding overhead activities or activities above shoulder level. (JS at 10.) She also contends that the ALJ's rejection of Dr. Berman's opinion "simply because [of] the way it was worded," was improper and if the ALJ wanted an opinion worded in terms of what Plaintiff is still capable of doing despite her impairments, or felt Dr. Berman's findings were ambiguous because of the way they were worded, the ALJ had a duty to contact Dr. Berman in order to fully and fairly develop the record. (Id. at 10-11.) In short, Plaintiff contends the ALJ again failed to give specific and legitimate reasons supported by substantial evidence to support his rejection of Dr. Berman's opinions. (Id. at 13.) And, because of this, Plaintiff alleges the ALJ

did not fully comply with the remand order.  (Id.)

Defendant responds that the ALJ's reasoning for rejecting Dr. Berman's opinion was "directly on point," because "the terms and analysis used in the workers' compensation realm are not useful in the federal disability evaluation."  (Id. at 15 (citations omitted).)  As such, "the ALJ properly rejected Dr. Berman's opinion as not useful."  (Id. at 16 (citation omitted).)

Thus, the ALJ on remand rejected Dr. Berman's opinions regarding Plaintiff's alleged shoulder impairment for three reasons:  (1) Dr. Berman's report indicated that x-rays of Plaintiff's left shoulder were "unremarkable"; (2) Plaintiff had no continued complaints of left shoulder problems after Dr. Berman's examination; and (3) the workers' compensation terminology used by Dr. Berman was not in terms that are usable or identifiable by the Agency because it did not identify what Plaintiff was capable of doing.

With respect to the ALJ's reasoning regarding his displeasure with the workers' compensation terminology, the Court finds that if this had been the only reason given, it would not be a specific or legitimate reason for rejecting Dr. Berman's opinion.  As the Court clearly stated in its prior Opinion,  "[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citing Coria v. Heckler, 750 F.2d 245, 247-48 (3rd Cir. 1984)); see also Lester, 81 F.3d at 832 (9th Cir. 1995) ("[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them").

However, the ALJ did provide two other reasons for discounting Dr. Berman's opinions that were specific and legitimate.  The fact that Dr. Berman's x-rays of Plaintiff's shoulder were "unremarkable" is an indication of a contradiction between Dr. Berman's notes and his opinion, a valid reason for rejecting a doctor's opinion.  See Valentine v. Comm'r of Soc. Sec. Admin.,

574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment).

Moreover, the fact that the voluminous medical records from Plaintiff's treating doctors – spanning the period of 2005 to 2012 – failed to document any legitimate continuing complaints of left shoulder problems after Dr. Berman's examination, is a specific and legitimate reason for discounting that opinion. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ may discredit treating physicians' opinions that are not supported by objective medical findings); see also 20 C.F.R. § 404.1527(c)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given).

Although there were some other reports suggesting reaching limitations, the ALJ properly discounted these other reports. For instance, the ALJ discounted the 2005 opinion of Plaintiff's treating physician, Dr. Symonett, who found limitations in reaching activities, on the basis that the objective evidence in the record did not support the limitations suggested by Dr. Symonett. (AR at 863-64.) Moreover, like Dr. Berman's assessment, this report also was contemporaneous with Plaintiff's shoulder and back injury.

The ALJ also discounted the September 10, 2010, opinion of the state agency medical consultant, Dr. Do, a non-treating, non-examining physician, who reviewed Plaintiff's medical evidence and included a limitation with respect to work above shoulder level on the left. (Id. at 862.) The ALJ noted

10

again that Plaintiff's left shoulder allegations were not fully supported by the medical evidence of record and gave only "some weight" to Dr. Do's opinion for this reason. (Id.)

And, on February 11, 2011, one of Plaintiff's treating physicians, Dr. Pasuhuk, completed a form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" and indicated Plaintiff had physical functions affected by her lumbar spine impairment, including her ability to reach. (Id. at 1237.) The ALJ gave Dr. Pasuhuk's opinion "little weight" as his extreme limitations, which also included very restrictive sitting, standing, and walking limitations, were not supported by the objective evidence in the record. (Id. at 863.) For the same reasons, he gave little weight to the January 3, 2007, opinion of treating physician, Dr. Yang, who also completed a "Multiple Impairment Questionnaire," and who also suggested more extreme limitations in sitting, standing and walking than the ALJ found to be supported by the record.[5] (Id. at 500, 864.) Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole); Tonapetyan, 242 F.3d at 1149 (ALJ may discredit treating physicians' opinions that are not supported by objective medical findings); see also 20 C.F.R. § 404.1527(c)(4).

Thus, as the ALJ found, there are no medical records that support a *continuing* issue with Plaintiff's left shoulder, and to the extent Plaintiff herself testified to ongoing left shoulder issues, the ALJ properly discounted her credibility, a finding that Plaintiff does not dispute.

**2.   Dr. Multani.**

Dr. Multani completed four separate questionnaires in which he gave his

---

[5] The Court notes that Dr. Yang indicated Plaintiff had only minimal limitation in reaching, including overhead. (AR at 501.)

11

opinion regarding Plaintiff's limitations caused by her mental impairments. Plaintiff contends the ALJ failed to indicate the portions of three of the questionnaires that conflicted with the fourth questionnaire. (JS at 11.) She also contends that contrary to the ALJ's finding of inconsistency between the questionnaires, the March 9, 2009, questionnaire is consistent with the other three questionnaires completed by Dr. Multani on March 4, 2009, August 17, 2010, and September 17, 2010. (Id.) She also contends that the ALJ's use of global assessment of functioning ("GAF") scores to discredit Dr. Multani was improper. (Id. at 12.) Finally, she states that the ALJ misstated the evidence when he stated that Plaintiff's March 2009 GAF score "of 40 would not be consistent with an original score of 40 but with improvement in her condition," as her GAF score from that opinion was 45, not 40. (Id. at 12-13 (citing id. at 667).) For all of these reasons, Plaintiff contends that the ALJ failed to give specific and legitimate reasons supported by substantial evidence to support his rejection of Dr. Multani's opinions, and, as a result, failed to comply with the Court's Order to properly consider his opinions. (Id. at 13.)

> The ALJ stated the following with respect to Dr. Multani's opinions:
> The underlying record shows the claimant received continuous diagnoses of "major depressive disorder, single, moderate" from Dr. Multani during his treatment of the claimant. The diagnosis given by the claimant's long term treating psychiatrist is given more weight regarding the level of severity and the recurrence of the depressive symptoms than is given to a medical professional who only examined the claimant one time. In addition, the records from Dr. Multani show the claimant's condition improving with treatment, which would indicate that the corresponding GAF score would change and no longer be in the 40's. . . .
>
> . . . .

> The last opinion considered is from Gurmeet Multani, M.D., the claimant's treating psychiatrist, as contained in four separate questionnaires scattered throughout the file. In three of the four questionnaires, the responses to the questions about the severity of the claimant's impairments were identical. In those questionnaires, Dr. Multani opined the claimant has significant symptoms of depression that are exacerbated by her physical condition. He noted her areas of difficulty are with interacting and communicating effectively with others; with concentration but that she can understand simple instructions; and with difficulty adapting and carrying out tasks and working on goals and issues. In the other questionnaire, [Exhibit 20F] he ranked all of her problems in the moderate or marked range with 12 of the 20 areas considered at the marked level. The Exhibit 20F questionnaire also contained a GAF score of 40/85. The opinions in the questionnaire in 20F, specifically the check-the-box ratings in the 20 separate areas considered, is not consistent with the description of the claimant's functioning level contained in the other three identical reports. Further, the GAF score of 40 reflects the current opinion on the functioning by Dr. Multani while the 80 reflects the highest score for the past year. This shows the claimant's GAF score has changed within the past year, but as discussed above, the GAF score is generally not a reliable indicator of the level of severity of mental impairments. This is again true for this situation because the treatment notes from Dr. Multani show the claimant's functioning level had increased steadily with treatment and the current score of 40 would not be consistent with an original score of 40 but with improvement in her condition (see treatment notes in Exhibit 18F). As such, the inconsistencies between the numerous reports from Dr. Multani and his own treatment notes show his opinion is not fully reliable. Thus, I give his opinions little weight.

(AR at 858, 859 (citations omitted).)

The Court notes that the ALJ gave more weight to Dr. Multani's opinions than to that of one-time examiner Liana Tanase, M.D., and did not completely reject Dr. Multani's findings, noting Dr. Multani's diagnosis and the fact that Dr. Multani's records showed improvement in Plaintiff's condition over time. (Id. at 858.) A review of Dr. Multani's questionnaires show that those of March 4, 2009, August 17, 2010, and September 17, 2010, describe mostly moderate limitations, while the March 9, 2009, questionnaire, a check-box type form, set forth marked limitations in the majority of categories. (Compare id. at 678, 1039, 1043, with id. at 670-72.) This is a legitimate reason for discounting the opinion of a treating physician. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases for their conclusions).

Moreover, consistent with the ALJ's findings, Dr. Multani's treatment notes from January to May 2008, generally indicated an increase in Plaintiff's energy; less worrying; improved sociability; less irritability; less sadness; less anxiety; and fewer sleep problems. (Id. at 617-29); Tommasetti, 533 F.3d at 1041 (9th Cir. 2008) (treating physician's opinion properly rejected where opinion was inconsistent with physician's records); Valentine, 574 F.3d at 692-93 (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss, 427 F.3d at 1216 (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment).

With respect to the GAF scores, as a threshold matter, the Commissioner has no obligation to credit or even consider GAF scores in the disability determination. See 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the

14

severity requirements in our mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Here, the ALJ specifically noted that GAF scores "are not meant to be endorsed or used for the agency's disability programs, as they do not have a direct correlation to the severity requirements in our mental disorders listings." (AR at 858.) Thus, the ALJ's statement that given Dr. Multani's findings of improvement with treatment, which would indicate the GAF score would seem to be no longer in the 40s, and any misstatement regarding the assigned GAF scores, had little to no bearing on the ALJ's finding of no disability and was harmless error. Curry v. Sullivan, 924 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

Based on the foregoing, the Court finds there was no error and the ALJ sufficiently complied with the Court's previous Order.

## C. The ALJ Did Not Improperly Substitute His Opinion for That of the Treating Physicians.

Plaintiff contends the ALJ failed to properly consider the opinions of Plaintiff's treating physicians, Dr. Pasuhuk, Dr. Symonett, and Dr. Yang. (JS at 19.) Specifically, she contends that the ALJ "played doctor" by rejecting these Doctors' opinions because 'the imaging scans and electro-diagnostic studies do not show observable nerve or spinal cord impingement, Plaintiff's pain level is not consistent with the level of degeneration observed in the imaging scans, there is no evidence of radiculopathy in the lower extremities, and there have been no significant increases or change in her pain medications. (Id. at 27 (citing AR at 863-64).) The ALJ also rejected the opinions regarding any limitations due to DVT because "there is no evidence of recurrent DVT, as she has not experienced a repeat episode since her initial diagnosis and the insertion

of the filter," stating that "claimant's DVT resolved and there is no evidence of any other DVT episodes," and "the level of limitation associated with the history of DVT is out of proportion with the actual limiting effects of the history of DVT as she has no[t] experienced another DVT incident since the initial leg blood clot." (Id. at 28 (citing AR at 863-64).) Plaintiff contends the ALJ "assumes" Plaintiff's DVT has resolved, despite Dr. Pasuhuk's indication that she suffers from recurrent DVT, and faces a lifetime of treatment with Coumadin to prevent another DVT episode. (Id. at 28 (citing AR at 1363).) She also notes that Dr. Symonett indicated that Coumadin contributes to Plaintiff's chronic leg pain, and, therefore, Plaintiff's leg pain is likely to continue. (Id. (citing AR at 424).)

With regard to the ALJ's finding that the medical records do not show the level of degeneration in Plaintiff's lumbar spine sufficient to warrant the extreme limitations suggested by Dr. Pasuhuk and Dr. Symonett, the ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole. Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole); Tonapetyan, 242 F.3d at 1149 (ALJ may discredit treating physicians' opinions that are not supported by objective medical findings); see also 20 C.F.R. § 404.1527(c)(4). Here, the ALJ also found that Plaintiff's subjective pain level is not consistent with the level of degeneration observed in Plaintiff's MRI. (AR at 863.) Since May 2005, there was no additional evidence of radiculopathy, no evidence of cord or nerve root impingement, and no evidence of further degeneration or other significant problems with Plaintiff's lumbar spine. (Id. at 855.) Moreover, the ALJ properly discounted Plaintiff's credibility, a finding that Plaintiff does not dispute.

The ALJ also noted that Plaintiff had no significant increases or changes in her pain medications that would show her spinal degeneration had

significantly worsened over time. This is a specific and legitimate reason for discounting the opinions of Plaintiff's treating physicians. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for purposes of eligibility for benefits); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (where claimant's multiple impairments were controllable by medication or other forms of treatment, ALJ did not err by finding impairments did not significantly limit claimant's exertional capabilities).

With respect to the ALJ's findings regarding Plaintiff's DVT, the record shows that Plaintiff has not had an episode since her initial diagnosis and the insertion of the filter. Again, as this impairment is effectively controlled, it was not error for the ALJ to find it was not disabling. Odle, 707 F.2d at 440. And, with regard to Plaintiff's leg pain, the ALJ's review of the record showed no radiculopathy in the lower extremities and took this, as well as his discounting of Plaintiff's credibility, into account when he found that her allegations of "crippling lower extremity pain" were not supported by the record. (AR at 863-64.)

As noted by Defendant, the objective findings in the record show mild results at most: April 2006 mild right knee imaging (id. at 1338, 1325); June 2006 mild right knee MRI (id. at 1325); June 2006 negative ultrasound for leg DVT (id. at 1334); April 2009 normal chest x-ray (id. at 1131); August 2009 normal abdominal sonogram (id. at 1127); August 2009 negative chest x-ray (id. at 1121); October 2009 negative head CT scan (id. at 1122); November 2009 normal spinal fluid test (id. at 1221); April 2010 negative chest x-ray and CT scan (id. at 1116-17, 1285-86); June 2010 normal abdominal CT scan (id. at 1011, 1277); September 2010 normal chest x-ray (id. at 1268); October 2010 negative chest x-ray (id. at 1107); October 2010 normal ultrasounds of both legs for DVT (id. at 1074, 1085); and July 2009 (id. at 1202), August 2010 (id. at

1021-22), and May 2011 (id. at 1165-66, 1169) normal physical examinations.

It appears that the ALJ gave great weight to the opinion of the medical expert, Dr. Goldhamer, who reviewed the entire medical record and testified at the hearing as to his opinion. (Id. at 860, 1389-93.) Dr. Goldhamer noted Plaintiff's history of DVT with a filter in place; history of migraine headaches; history of chronic back pain; history of diabetes mellitus; and history of sickle cell trait. (Id. at 1390.) Dr. Goldhamer stated that the record did not show any flare-ups of Plaintiff's DVT, and noted that her Coumadin, an anti-coagulant, should prevent any further flare-ups. (Id. at 1392.) He agreed she might need pain medications for her headaches and back pain, but would be able to drive an automobile with those medications. (Id.) He also found no support in the record for Plaintiff's asthma. (Id.) Dr. Goldhamer's functional limitations were virtually identical to the physical limitations of the RFC found by the ALJ. (Id. at 860, 1391.) Opinions of non-treating or non-examining physicians may serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record," as they are here. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's decision in rejecting the opinions of the treating physicians. Thus, there was no error.

**D. The ALJ Provided a Complete and Accurate Assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ failed to properly assess Plaintiff's RFC. She bases this on her contention that the ALJ erred in rejecting the opinions of Plaintiff's treating and examining physicians, Drs. Berman, Multani, Symonett, Yang, and Pasuhuk. (JS at 32-33.) She contends that if the ALJ had properly considered these opinions, she would have been found to be disabled, as they found her incapable of performing even sedentary work and/or opined she

1 would be absent from work three or more days per week because of her
2 limitations. (Id. at 34.) As discussed above, the Court finds no error in the
3 ALJ's discounting of these opinions. Thus, there was no error in the ALJ's
4 assessment of Plaintiff's RFC.

## IV.

## **ORDER**

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: April 25, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge